Beulah CHASE, Plaintiff,

v.

Roland McMASTERS et al.,
Defendants.

No. A4–75–71.

United States District Court,
D. North Dakota,
Northwestern Division.

Dec. 20, 1975.

Thomas K. Schoppert, North Dakota Legal Services, New Town, N. D., for plaintiff.

Tom M. Beyer, Dickinson, N. D., for defendants.

## MEMORANDUM AND ORDER

VanSICKLE, District Judge.

This is an action, laid under civil rights theories, for an order of this Court mandating the city government of New Town, North Dakota, to tie sewer and water into an urban lot held by the United States in trust under Title 25 United States Code § 465. The matter is presented on verified pleadings and affidavits on a motion for preliminary injunction.

The motion for preliminary injunction is denied.

Plaintiff is an enrolled Indian of the Three Affiliated Tribes. New Town is a federally sponsored city, laid out within the Fort Berthold Indian Reservation, to replace Sanish and Van Hook, which were inundated by the Garrison Reservoir.

Plaintiff and her husband, after retiring from their employment in California, moved back to New Town. Plaintiff has bought from the City of New Town Lot 16, Block 3, Highland Village Addition. This lot is serviceable by city water and sewer, and in fact $702.00 of the $1,302.00 paid for the lot included special assessments for water mains, sewer mains, and other municipal improvements. Plaintiff undertook to finance construction of her home through the Fort Berthold Housing Authority, which locally administered Housing and Urban Development (HUD) Loans. As a preliminary step, on June 23, 1975, Plaintiff transferred her lot to the United States to be held as Indian trust land pursuant to 25 United States Code § 465. She acted under the assumption that HUD required such a transfer in trust as a condition precedent to the granting of a loan for the construction of an Indian Mutual Help Unit. HUD has denied by letter (in affidavit attachments) that it imposes any such requirement. However, it does require that a cooperation agreement be executed between the municipality and the local agent of HUD before HUD will authorize the placement of any units on trust or fee land within a municipality. The purpose of the cooperation agreement is to assure that Indian Mutual Help Units are provided municipal services; and the quid pro quo is a guarantee of payment-in-lieu-of-taxes by HUD.

There is no showing of a good faith effort of HUD or its agent to negotiate such a cooperation agreement. Rationally, HUD, as the unit seeking the privilege, would seem to be the party who should initiate the negotiation.

Plaintiff moved a house trailer onto the lot in May of 1975. She anticipates, when the loan is approved, building a home on the lot. Meantime, if she wishes to live in the mobile home, she must do so without water or sewer. Plaintiff is receiving retirement income, and has professed her willingness to pay for all connection charges of both water and sewer and for the subsequent service charges that flow therefrom.

In the meantime, the City of New Town, cognizant of the trust status of the land, and of the fact it cannot levy special assessments on trust land or recover delinquent service charges from trust land by assessments collectible in the nature of taxes, as it can in the case of fee land (see N.D.C.C. §§ 40–24–01, 40–25–01, 40–34–05, and 40–22–01(1)), has refused to extend the services until this matter is resolved.

Plaintiff seeks a declaratory judgment that she is entitled to water and sewer service, preliminary and permanent injunctions restraining Defendants from preventing her from connection to water and sewer systems, and damages. Jurisdiction is alleged under 28 U.S.C. § 1343 and § 1331 for causes of action stated under 42 U.S.C. § 1983 and § 1985(3). A declaratory judgment is sought under 28 U.S.C. § 2201.

Plaintiff's complaint sets forth three different theories of recovery. Their validity or invalidity bears directly on whether a preliminary injunction should be issued.[1]

Plaintiff's first two theories of recovery are apparently laid under 42 U.S.C. § 1983 (1974), which reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■■ To determine whether Plaintiff has alleged a cause of action under § 1983, the following principles apply:

"The basic requirements of a § 1983 complaint are: (1) that complained conduct was under color of state law, and (2) that such conduct subjected plaintiff to a deprivation of rights, privileges or immunities secured by the Federal Constitution and laws."

*Wilkerson v. City of Coralville,* 478 F.2d 709, 710 (8th Cir. 1973). With respect to the second requirement of a § 1983 complaint, the Plaintiff "must allege facts showing that the defendants acted to deprive [her] of the rights, privileges, and immunities *secured by the Fourteenth Amendment of the Constitution.* [Emphasis added.]" *Spears v. Robinson,* 431 F.2d 1089, 1091 (8th Cir. 1970), affirming *Spears v. Mount Etna Morris,* 313 F.Supp. 52 (W.D.Mo.1969).

The Defendants—a city mayor and city councilmen—are acting under color

---

[1] I realize that the federal rules have effectively abolished the "theory of the pleadings doctrine." *See* Wright & Miller, *Federal Practice and Procedure*: Civil § 1219 (1969). Accordingly, I should not *dismiss* a complaint for failure to state a claim merely because it does not set forth the precise "legal theory" which would entitle the petitioner to relief. The complaint will stand if I can discover a legal theory which would entitle the petitioner to relief on the facts alleged.

However, where the question is the propriety of the issuance of a preliminary injunction; where the complaint has alleged three alternative legal theories justifying recovery; and where I can perceive no other theories justifying relief on any of the *federal claims* the petitioner might have, in deciding whether to grant a preliminary injunction, I am limited to examining the validity of the legal theories presented in the complaint.

of state law. Thus, the first requirement to state a cause of action under § 1983 is present in each of Plaintiff's first two theories of recovery. The second requirement, though present in the first theory, is not present in the second theory.

Plaintiff's first theory of recovery alleges a denial of equal protection in that the Defendants "have singled out the Plaintiff solely on the basis of race and have so classified her on her basis of race as to a denial of services so provided by the City of New Town, North Dakota." Although Plaintiff thereby alleges that she has been denied access to the city's water and sewer systems because she is an Indian, this allegation was abandoned by Plaintiff's counsel at the hearing on the motion for a preliminary injunction. Plaintiff conceded that the sole reason the city officials have denied access to her is the fact that her land is now in "trust status." There is no outstanding contention by the Plaintiff that the city officials have invidiously discriminated against her simply because she is an Indian. Thus, the violation of equal protection alleged under § 1983 in Plaintiff's first theory of recovery is that the city officials have refused to give her water and sewer service because her land is now in "trust status."

■ Plaintiff's second theory of recovery, also apparently laid under § 1983, alleges a deprivation of "her right to hold land in trust status and to the benefits that are derived from such status." I do not read 25 U.S.C. § 465 as creating a "federal right" in favor of individual Indians to have the United States government hold their land in trust for them. The statute cited clearly says that any acquisition shall be in the discretion of the Secretary of the Interior.

■ Even if I did find such a right to exist, its denial would not be actionable under § 1983, since it is not a right secured by the Fourteenth Amendment or by a federal statute passed by the

Congress under the authority thereof. Hence, Plaintiff's second theory of recovery does not state a cause of action under § 1983.

■ Plaintiff's third theory of recovery is apparently laid under 42 U.S.C. § 1985(3). Title 42 U.S.C. § 1985(3) (1974), as it pertains to this lawsuit, reads as follows:

"If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

"The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). See also *Means v. Wilson*, 522 F.2d 833, 839–41 (8th Cir. 1975).

Plaintiff's third theory of recovery alleges a conspiracy of the Defendants to "deprive the Plaintiff of her right to equal treatment under the law to water and sewer benefits provided by the city of New Town, North Dakota, and mandated under the Equal Protection Clause under the Fourteenth Amendment to the Constitution." Plaintiff fails to state a cause of action under § 1985(3), however, because she does not allege, or claim, any "invidiously discriminatory animus" behind the actions of the De-

fendants. *Griffin v. Breckenridge,* supra, 403 U.S. at 102, 91 S.Ct. at 1798. There is no outstanding contention by the Plaintiff that the Defendants have invidiously discriminated against her simply because she is an Indian. Plaintiff contends she is being discriminated against because the land is in "trust status." I do not think this constitutes the "racial, or perhaps otherwise class-based, invidiously discriminatory animus" required to state a cause of action under § 1985(3). *Griffin v. Breckenridge,* supra, 403 U.S. at 102, 91 S.Ct. at 1798.

Consequently, considering Plaintiff's three different theories of recovery, I find that she has stated a cause of action only under the first; i.e., that the Defendants are denying Plaintiff equal protection by refusing to give her water and sewer service because she occupies land which is in "trust status."

▇▇ The question now is under what standard of review to evaluate the Defendants' alleged denial to Plaintiff of her right to equal protection. The classification allegedly made by the city officials (those who occupy land in "trust status") is not racial, and access to municipal water or sewer service has not yet been denominated a "fundamental right." I conclude that the Defendants' alleged discriminatory rejection of Plaintiff's application for water and sewer service must be evaluated under the traditional "rational basis" analysis rather than the stricter "compelling state interest" analysis. See *Davis v. Weir,* 497 F.2d 139, 144 (5th Cir. 1974). "[T]he Fourteenth Amendment does not deny to States [or municipalities] the power to treat different classes of per-

sons in different ways. . . . A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S. Ct. 251, 254, 30 L.Ed.2d 225 (1971). So the alleged unconstitutional classification (those who occupy land in "trust status") must be sustained "if the classification itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S. Ct. 2821, 2825, 37 L.Ed.2d 782 (1973).[2]

The standard of review is pertinent because I must decide whether to grant Plaintiff's motion for a preliminary injunction. A party seeking a preliminary injunction "must demonstrate . . . that irreparable damage will follow without the grant of equitable relief and . . . a reasonable probability that the party . . . would ultimately prevail." *Wooten v. First National Bank of St. Paul, Minnesota,* 490 F.2d 1275, 1276 (8th Cir. 1974).

N.D.C.C. § 40–34–05 (1968) provides that the governing body of a municipality:

". . . may establish just and equitable rates and charges to be paid for the use of [a sewage disposal system] by a person . . . whose premises are served thereby. If the established service charge is not paid when due, . . . such sum may be assessed against the premises served and collected and returned in the same manner as other county and municipal

---

2. Presently, I do not see this case as involving a problem of "underinclusiveness." For example, if the city has not extended its alleged policy (of refusing water and sewer service to occupiers of "trust" land) to occupiers of "non-trust" land which is tax-exempt, there could conceivably be a problem of "underinclusiveness"; that is, there could be persons "similarly circumstanced" as the Plaintiff who are not being treated as she

is. Occupiers of "non-trust" tax-exempt land would be "similarly circumstanced" as the Plaintiff unless their land was:
 1. Vulnerable to special assessments (as opposed to general property taxes),
 2. Covered by some kind of "payment-in-lieu-of-taxes" agreement, or
 3. Somehow otherwise distinguishable from "trust" land.

taxes are assessed, certified, collected, and returned."

 It is certainly a legitimate governmental interest for a city to be concerned with the collection of sewer service charges. However, a city does not have the option of assessing delinquent sewer service charges against "trust" land, since such land is exempt from local taxation. 25 U.S.C. § 465. The Plaintiff's promise to pay sewer service charges, however honestly made, is not equivalent to the extraordinary remedies which would be available to the city to collect delinquent service charges as a tax assessment. See N.D.C.C. §§ 40–24–01 and 40–25–01 (1968). In this light, is the Defendants' refusal to connect Plaintiff to the sewer system "rationally related" to the legitimate governmental interest of the city in collecting sewer service charges?

In addition, N.D.C.C. § 40–22–01(1) (1968) provides that any municipality may defray, by special assessments, the expense of the "construction of a water supply system, or a sewerage system, or both, or any part thereof, or any improvement thereto or extension or replacement thereof . . .."

 It is certainly a legitimate governmental interest to provide and maintain municipal water and sewer systems; and to do this it is necessary that there be adequate financing available. In North Dakota one means of insuring adequate financing is the cities' ability to levy special assessments. However, again, land which is in "trust status" is "exempt from State and local taxation." 25 U.S.C. § 465 (1963). Is discriminating against those who occupy land in "trust status" that is exempt from assessments of maintenance charges rationally related to the legitimate governmental interest of providing and maintaining municipal water and sewer systems?

Without finally answering the questions I have posed, I feel that Plaintiff has not demonstrated "a reasonable probability that [she] . . . would ultimately prevail." *Wooten v. First National Bank of St. Paul, Minnesota,* supra, 490 F.2d at 1276. Consequently, the request for a preliminary injunction is *denied.*