552 F.2d 1332
 CONFEDERATED BANDS AND TRIBES OF the YAKIMA INDIAN NATION, Appellant,
v.
STATE OF WASHINGTON, County of Yakima, Daniel J. Evans as
Governor of the State of Washington and Individually, Slade
Gorton, as Attorney General of the State of Washington and
Individually, Les Conrad, Cliff Onsgard and Lenore Lambert
as County Commissioners and Individually, Appellees.
 No. 74-1225.
 United States Court of Appeals,
Ninth Circuit.
 April 29, 1977.
 
 James B. Hovis, argued, Hovis, Cockrill & Roy, Yakima, Wash., for appellant.
 Slade Gorton, Atty. Gen., Malachy R. Murphy, Deputy Atty. Gen., argued, Olympia, Wash., Jeffery C. Sullivan, Pros. Atty., Robert N. Hacket, Jr., argued, Yakima, Wash., for appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before HUFSTEDLER, MOORE,* and WRIGHT, Circuit Judges.
 OPINION
 ON REMAND FROM THE COURT EN BANC
 HUFSTEDLER, Circuit Judge:
 
 
 1
 The Confederated Bands and Tribes of the Yakima Indian Nation ("Yakimas"), invoking federal jurisdiction under 28 U.S.C. § 1362, brought this suit challenging the statutory and constitutional validity of the State of Washington's assumption of criminal and civil jurisdiction over the Yakimas' reservation lands. The district court rejected the Yakimas' statutory and constitutional contentions, in part relying upon Quinault Tribe of Indians v. Gallagher (9th Cir. 1966) 368 F.2d 655 ("Quinault II"). Our court sua sponte ordered this case en banc for the limited purpose of deciding whether to overrule that portion of Quinault II which states that PL-280[1] authorized Washington's statutory partial assumption of jurisdiction (R.C.W. § 37.12.010). The majority of the court adhered to Quinault II, upholding R.C.W. § 37.12.010 against statutory attack. (Confederated Bands and Tribes v. Washington (9th Cir. en banc 1977) 550 F.2d 443.) The en banc court remanded the case to the panel to determine the constitutional questions raised by the Yakimas.
 
 
 2
 The Washington statute[2] divides jurisdiction into two broad categories: (1) jurisdiction assumed with the consent of the affected tribes; (2) jurisdiction assumed without tribal consent. As to unconsenting tribes, Washington assumed jurisdiction to the fullest extent possible under PL-280 in respect of fee land, but assumed jurisdiction as to non-fee lands only with respect to eight subject matter categories (compulsory school attendance, public assistance, domestic relations, mental illness, juvenile delinquency, adoption proceedings, dependent children, and operation of motor vehicles on public thoroughfares). The Yakimas' reservation is a checkerboard of fee owned and non-fee owned land.
 
 
 3
 The Yakimas challenge the constitutional validity of this statute on both due process and equal protection grounds. They contend that the eight categories of subject matter jurisdiction assumed are vague and impermissibly over- and underinclusive and that the statute, on its face and as applied, deprives them of equal protection. The impact of territorial checkerboarding and fragmentation of subject matter jurisdiction creates a host of classifications that present difficult equal protection problems.[3] We need to grasp firmly only one of these constitutional nettles the classification based on the status of title to the land upon which an alleged criminal offense occurs. Under R.C.W. § 37.12.010, a Yakima Indian living on a parcel of non-fee land who is the victim of a crime has no law enforcement protection from Washington, but a Yakima Indian living on the adjoining parcel of fee land who is the victim of the same crime has law enforcement protection from Washington. We hold that Washington's partial[4] assumption of jurisdiction based upon this land title classification cannot withstand the Yakimas' equal protection attack, and we strike down Section 37.12.010.
 
 
 4
 Before we analyze the title-based classification, we dispose of some preliminary questions. The first is the impact upon the equal protection issue of the court's en banc decision that Washington's partial assumption scheme was authorized by PL-280. At the risk of restating the obvious, a determination that Congress permitted Washington to enact the partial assumption scheme of Section 37.12.010 is not a pronouncement that the authorized scheme is constitutional. The en banc court did not purport to reach any constitutional issue. It is elementary, of course, that Congress cannot authorize a state to violate the Equal Protection Clause, any more than a state, without any federal involvement, can violate the Equal Protection Clause. (Cf. Dandridge v. Williams (1970) 397 U.S. 471, 483, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 ("Although a State may adopt a maximum grant system in allocating its fund available for AFDC payments without violating the (Social Security) Act, it may not, of course, impose a regime . . . in violation of the Equal Protection Clause of the Fourteenth Amendment."); Shapiro v. Thompson (1969) 394 U.S. 618, 641, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600 ("Congress may not authorize the States to violate the Equal Protection Clause.").)
 
 
 5
 Second, we recognize that the concepts of fundamental rights and strict scrutiny are inapplicable to the title-based classification system that we are testing. No matter how desirable may be effective criminal law enforcement on the reservation, we do not believe that the Indians' interest in that public service can be characterized as "fundamental." (See, San Antonio Independent School District v. Rodriguez (1973) 411 U.S. 1, 29-39, 93 S.Ct. 1278, 36 L.Ed.2d 16.) Although Section 37.12.010 has racial implications because its impact is limited to Indian reservations, the classification based on fee and non-fee lands within reservations is not on its face racially discriminatory, and, as far as the record reveals, was not adopted to mask racial discrimination. Both Indians and non-Indians live on both fee and non-fee land within the Yakima reservation. (Cf. Jefferson v. Hackney (1972) 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285. See generally, United States Dep't of Agriculture v. Moreno (1973) 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782; Ely, "Legislative and Administrative Motivation in Constitutional Law," 70 Yale L.J. 1205 (1970).)
 
 
 6
 Third, we need not here decide whether the Supreme Court continues to espouse the traditional two-tier equal protection approach,[5] because Washington's title-based classification fails to meet any formulation of the rational basis test. (See, e. g., Massachusetts Board of Retirement v. Murgia (1976) 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520; Reed v. Reed (1971)404 U.S. 71, 75-76, 92 S.Ct. 251, 30 L.Ed.2d 225; McDonald v. Board of Election Commissioners (1969) 394 U.S. 802, 808-09, 89 S.Ct. 1404, 22 L.Ed.2d 739; McGowan v. Maryland (1961) 366 U.S. 420, 425-26, 81 S.Ct. 1101, 6 L.Ed.2d 393.) A statute according different treatment to similarly situated persons on the basis of a criterion wholly unrelated to the objective of the statute is a denial of equal protection.
 
 
 7
 The operative criterion of the criminal jurisdiction classification in issue is the status of title. The purpose of the statute, as advanced by the Washington Attorney General, in limiting criminal jurisdiction over non-fee lands to offenses within the eight enumerated subject areas[6] is that these areas are ones "in which the state has the most fundamental concern for the welfare of those least able to care for themselves . . . ." (C.T. at 586.) Washington argued[7] that jurisdiction was limited to areas of "fundamental and overriding" concern. It did not argue that any other purpose was intended to be served by this limited jurisdiction over criminal acts committed on reservations, and no other rationale leaps to our eyes.[8] (See, Gunther, "The Supreme Court 1971 Term, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection" 86 Harv.L.Rev. 1, 20-21 (1972).)
 
 
 8
 We can detect no rational connection between the stated purpose and the distinction based on land title within the reservation. The state's interest in enforcing criminal law is no less "fundamental" or "overriding" on non-fee lands than on fee lands. An overriding concern with and responsibility for public order necessarily embrace both, once the state undertakes to assume any jurisdiction over either. No showing has been or can be made that the happenstance of title holding is related in any way to the need by the land occupants for law enforcement. Moreover, no relationship has been suggested or shown between the interest and the ability of the state to provide law enforcement and the fee non-fee status of the land within the reservation. This checkerboard jurisdictional structure based on a selection by land title is the "very kind of arbitrary legislative choice forbidden by the Equal Protection Clause . . .." (Reed v. Reed (1971) 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225.) Accordingly, the partial territorial assumption of criminal jurisdiction under R.C.W. § 37.12.010 is a denial of equal protection.
 
 
 9
 Can the invalidated portion of Section 37.12.010 be separated from the remainder of the statute, or does the whole statute fall?[9] The Washington legislature could have severed these provisions, but we cannot do so. The statute contains no severability clause.[10] We are unable to attribute to Washington a willingness to include more jurisdiction than it undertook partially to assume.[11] When Washington chose to be expansive in assumption, it evidenced that intention. But in the statute under attack, it expressly limited its assumption to partial jurisdiction. We do not believe that Washington would have attempted to regulate such categories of jurisdiction as juvenile delinquency without criminal jurisdiction or the availability of criminal sanctions. Nor do we believe that Washington would have undertaken to regulate such subjects as "dependent children," "adoption proceedings," or "public assistance," without regulating "juvenile delinquency." Finally, without criminal jurisdiction over offenses on the reservation and with no civil jurisdiction over events on non-fee lands, we cannot assume that Washington would have created a checkerboard pattern of civil jurisdiction, accepting civil jurisdiction over fee lands only. In short, the remainder of the statute cannot be rescued by a simple excision; the whole statute must be rewritten, a task manifestly beyond our constitutional competence.
 
 
 10
 REVERSED.
 
 
 
 *
 Honorable Leonard P. Moore, Senior United States Circuit Judge, Second Circuit, sitting by designation
 
 
 [1]
 Act of Aug. 15, 1953, ch. 505, 67 Stat. 588-90
 
 
 [2]
 R.C.W. § 37.12.010:
 "Assumption of criminal and civil jurisdiction by state. The State of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of R.C.W. 37.12.021 (tribal consent) have been invoked, except for the following:
 (1) Compulsory school attendance;
 (2) Public assistance;
 (3) Domestic relations;
 (4) Mental illness;
 (5) Juvenile delinquency;
 (6) Adoption proceedings;
 (7) Dependent children; and
 (8) Operation of motor vehicles upon the public streets, alleys, roads and highways: Provided further, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted."
 
 
 [3]
 E. g., When an adult Indian and a juvenile Indian are charged with an offense committed on non-fee land, is it a denial of equal protection for the state to prosecute the juvenile but not the adult? To uphold the statute, we would have to analyze and approve each classification drawn by it
 
 
 [4]
 Congressional consent in PL-280 was not consent to a total assumption by the States. Certain specialized areas were specifically retained by the Federal Government in PL-280. (E. g., fishing rights guaranteed by treaty; restraints on state taxation of tribal trust land.) In addition, the Supreme Court has recently interpreted PL-280's consent to assumption of civil jurisdiction to be limited to application of state civil law in court proceedings rather than consent to the "(extension of) general state civil regulatory authority . . . to govern Indian reservations." (Bryan v. Itasca County (1976) 426 U.S. 373, 387, 96 S.Ct. 2102, 2110, 48 L.Ed.2d 710.) We use "full" jurisdiction to indicate the maximum Washington could have validly assumed under PL-280. Under the Bryan interpretation Washington could have gone beyond its assumption of criminal jurisdiction and exercised criminal jurisdiction over the non-fee lands as well, and thus Washington's assumption was "partial."
 
 
 [5]
 Compare Massachusetts Board of Retirement v. Murgia (1976) 427 U.S. 307, 318-22, 96 S.Ct. 2562, 49 L.Ed.2d 520 (Marshall, J., dissenting) with Craig v. Boren (1976) 429 U.S. 190, 97 S.Ct. 451, 463, 50 L.Ed.2d 397 (Powell, J., concurring)
 
 
 [6]
 Some of the subject areas are not likely to define offenses or to contain criminal sanctions; but some, e. g., compulsory school attendance, juvenile delinquency, and operation of motor vehicles, do partake of criminal jurisdiction and criminal sanctions to some extent
 
 
 [7]
 Yakima County, a co-defendant, advanced a different theory of the statute's purpose, but the record reveals that the State never adopted this additional rationale. The defendants' consolidated brief on appeal does not advance a legislative purpose and argues only that San Antonio Independent School District v. Rodriguez (1973) 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, is "(d)ispositive . . . of the tribe's equal protection argument . . . " (Brief for Appellees at 51.) The appellees are wrong in this contention because it is based on the erroneous premise that "(w)here the United States Supreme Court has found classifications or distinctions to be irrational and thus violative of the Equal Protection Clause, basic and fundamental rights were involved." (Id.) While we agree that strict scrutiny is not applicable to the one classification upon which our analysis focuses, the rational basis test applies to statutory classifications that do not affect fundamental rights. (E. g., Reed v. Reed (1971) 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 ("right" to be appointed personal representative of son's estate).)
 
 
 [8]
 We have no reason to believe that Washington's Attorney General, in making the argument, was "selecting a convenient, but false, post-hoc rationalization." (Craig v. Boren (1976) 429 U.S. 199-200, 97 S.Ct. 451, 458 n.7, 50 L.Ed.2d 397.)
 
 
 [9]
 Assuming arguendo that the issue of severability is to be determined by state standards, the statute is unseverable according to results of the tests advanced in State v. Anderson (1972) 81 Wash.2d 234, 501 P.2d 184
 
 
 [10]
 Under Washington law a severability clause is deemed conclusive unless, by facts subject to judicial notice, it can be said that the declaration of legislative intent is on its face obviously false. (Id.)
 
 
 [11]
 The statute fails under the test of whether "the legislature would have passed the remaining portion of the statute without the unconstitutional portion." (Id. at 501 P.2d 186. See also United States v. Johnson (1968) 390 U.S. 563, 585, 88 S.Ct. 1231, 20 L.Ed.2d 132 (accord, applying federal standards).)