**Beulah CHASE, Appellant,**

v.

**Roland McMASTERS, Jack Smith, Jr., Wayne Turner, Arlyn Wadholm and Russel Pederson, Appellees.**

**No. 77–1317.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1977.

Decided April 5, 1978.

Rehearing and Rehearing En Banc Denied May 15, 1978.

See also, D.C., 405 F.Supp. 1297.

Robert A. Mandel, New Town, N. D., argued, for appellant; Thomas K. Schoppert (argued), Lynaugh & Fitzgerald, Billings, Mont., and Thomas O. Gunderson, North Dakota Legal Services, New Town, N. D., on brief.

Tom M. Beyer, Dickinson, N. D., for appellees.

James R. Britton, U. S. Atty., Fargo, N. D., Drew S. Days, III, Asst. Atty. Gen., and Walter W. Barnett, and Judith E. Wolf, Attys., Dept. of Justice, Washington, D. C., on brief for U. S. as amicus curiae.

Before HEANEY, WEBSTER * and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Beulah Chase is an enrolled member of the Three Affiliated Indian Tribes which occupy the Fort Berthold Reservation in North Dakota. She brought this action for declaratory, injunctive and monetary relief pursuant to 42 U.S.C. § 1983 and § 1985(3) against the mayor and councilmen of New Town, North Dakota, individually and in their official capacities. She alleged that their refusal to allow her to connect her home to city sewer and water lines violated her right to equal protection of the laws and deprived her of a statutory right to have her land, which was held in trust for her by the United States, exempt from local taxes. The Indian Organization Act of 1934, also known as the Wheeler-Howard Act, 25 U.S.C. § 461 *et seq.* (1970), authorizes the Secretary of the Interior to acquire land for Indians. Under 25 U.S.C. § 465, title to such lands is taken by the United States in trust for the Indian or Indian tribe, and the land is exempt from state and local taxation.[1]

The District Court initially dismissed the § 1985(3) claim and denied preliminary injunctive relief. *Chase v. McMasters*, 405 F.Supp. 1297 (D.N.D.1975). It subsequently denied relief on the § 1983 claim after it considered exhibits, depositions and stipulations of fact. Chase appeals from the latter judgment.

* * * * * *

---

* WILLIAM H. WEBSTER, Circuit Judge, participated in the oral argument and bench conference but did not participate in the preparation of this opinion.

1. Section 465 reads as follows:

The Secretary of the Interior is hereby authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

Title to any lands or rights acquired pursuant to [25 U.S.C. §§ 461–463, 464, 465, 466–470, 471–473, 474, 475, 476–478, 479] of this Act shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

25 U.S.C. § 465 (1970).

The Three Affiliated Tribes voted to have the Indian Reorganization Act apply to them, *see* 25 U.S.C. § 478, and have adopted a Constitution and By-Laws under § 476 of the Act.

## BACKGROUND

New Town is within the Fort Berthold Reservation. *City of New Town, North Dakota v. United States*, 454 F.2d 121 (8th Cir. 1972). Chase and her husband, John, purchased a parcel of land located within the city limits from New Town in 1974. Approximately a year later, the Chases conveyed title to the lot to the United States in trust for Beulah Chase. The acquisition, made pursuant to § 465, was approved by the Department of the Interior, Bureau of Indian Affairs. Shortly thereafter, the Chases applied to the city council for connection to city sewer and water lines which ran across the front of their lot. Seven hundred and two dollars ($702.00) of the $1,102.00 purchase price of the lot was payment of special assessment charges for construction of the water and sewer lines and a water treatment plant, and the Chases were willing to pay the routine connection fee and subsequent service charges. The city council, aware of the land's trust status, delayed action on the request until it could obtain legal advice as to whether it was required to provide sewer and water services to a lot held in trust by the United States for an individual. The chief of police, following what he believed to be the mayor's instructions, informed John Chase that New Town would not allow the water hookup as long as the lot was in trust status, and Beulah Chase filed suit.

In an unpublished opinion, the District Court held that Chase failed to present a prima facie case of racial bias and had not been denied any constitutional rights by New Town's actions. It held that the action was reasonable and justified because New Town would not be able to assess Chase's land in order to collect delinquent sewer service charges as it is able to assess other lands. *See* N.D.Cent.Code § 40–34–05 (1960).

## MOOTNESS

■ Chase's claim for injunctive relief became moot when she sold the property in question. She did not, however, abandon her claim for damages.[2] A viable claim for damages insures the existence of a live controversy appropriate for judicial resolution—at least to the extent of determining whether a claim is stated and a damage remedy is available. *See Powell v. McCormack*, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); 13 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3533 at 272–273 (1972). Thus, this case can be distinguished from *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977), which held that no live controversy was present because the plaintiff had previously abandoned his damage claim by not appealing the decision that the defendants were immune from liability in damages.

## CONSTRUCTION OF 25 U.S.C. § 465

■ New Town argues that § 465 does not authorize the Secretary of the Interior to accept conveyance of title to land already owned in fee by an individual Indian. We disagree.[3] Although the term "acquisition" and the stated purpose of "providing land for Indians" could indicate that the Secretary was only authorized to make a net addition to existing Indian land holdings by providing lands for landless Indians, such an interpretation is not required by the statutory language or the Act's legislative history. While the Senate Report does refer to "landless Indians," the Supreme

---

**2.** The complaint states a viable claim for damages under the liberal pleading provisions of Fed.R.Civ.P. 8. Chase requested damages for the diminished value of her land; inability to receive, or difficulty in receiving, a federal housing loan; and for being deprived of water and sewer service while living on her land in a mobile home.

**3.** Although the Department of the Interior is not a party and New Town did not pursue administrative remedies, we do not hesitate to decide this issue. Its resolution is necessary to determination of the defendants' liability, the facts are not in dispute, and the issue is one of statutory construction which does not require administrative expertise or involve exercise of administrative discretion. *See Mescalero Apache Tribe v. Hickel*, 432 F.2d 956, 958 (10th Cir. 1970), *cert. denied*, 401 U.S. 981, 91 S.Ct. 1195, 28 L.Ed.2d 333 (1971).

Court has refused to read such remarks in the legislative history of a similar statute, which also granted tax-exempt status to Indian land, as limiting the benefits of the statute to landless Indians. *Board of Comm'rs v. Seber*, 318 U.S. 705, 710, 63 S.Ct. 920, 87 L.Ed. 1094 (1943). A narrow construction of the term "acquire" and the phrase "*providing land for Indians*" runs counter to the principle that ambiguous statutes passed for the benefit of Indian tribes are to be interpreted in a light most favorable to Indians. *Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), *quoting Alaska Pacific Fisheries v. United States*, 248 U.S. 78, 89, 39 S.Ct. 40, 63 L.Ed. 138 (1918).

 The purpose of the Indian Reorganization Act of 1934 was "to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152, 93 S.Ct. 1267, 1272, 36 L.Ed.2d 114 (1973), *quoting* H.R.Rep. No. 1804, 73rd Cong. 2d Sess., 1 (1934). The Act reflected a new federal policy of halting the loss of Indian lands which had occurred under statutes that allotted tribal lands to individual Indians and disposed of "surplus" land under settlement laws. *Id.* at 151, 93 S.Ct. 1267. The Act not only authorized the Secretary to acquire land for Indians, 25 U.S.C. § 465, but continued the trust status of restricted lands indefinitely, 25 U.S.C. § 462, restored unallotted "surplus" lands to tribal sovereignty, 25 U.S.C. § 463, and made voluntary exchanges and transfers of land to tribes exempt from the prohibition against transfers of restricted Indian land. 25 U.S.C. § 464. Because many Indians who were unable to manage their allotted lands had sold them or had them sold at a tax sale, *see* 78 Cong.Rec. 11726 (1934) (remarks of Rep. Howard), immunity from property taxes was an important means of halting further loss of Indian land. *See generally* U. S. Dept. of the Interior, Feder-

al Indian Law 857 (1958). Thus, even if, as the defendants contend, the Secretary did take Chase's desire to be relieved from the obligation of paying property taxes into account in making his decision, he would not necessarily have exceeded his delegated authority. *See Board of Comm'rs of Pawnee County, Okla. v. United States*, 139 F.2d 248, 252 (10th Cir. 1943).

 The Secretary may purchase land for an individual Indian and hold title to it in trust for him. There is no prohibition against accomplishing the same result indirectly by conveyance of land already owned by an Indian to the United States in trust. Section 465 lists gifts among the means by which the Secretary may acquire land, and it was amended to authorize acquisition of land in trust for individual Indians as well as for tribes. *See* 78 Cong.Rec. 11126 (1934). Congress did not limit the Secretary's discretion to select land for acquisition. The land acquired may be located within or without a reservation, and there is no indication that it could not be located within municipal boundaries. Indeed, in legislation passed in 1937, Congress provided that Indian homestead lands located within village, town or city boundaries would be tax exempt. *See* 25 U.S.C. § 412a.

 We conclude that § 465 authorizes the type of acquisition the Secretary made here. The defendants argue, however, that the Secretary abused his discretion in this particular case. Since the Secretary's action was not directly challenged, we do not have the benefit of a record of agency proceedings and do not know what factors the Secretary took into account in exercising his discretion. Suffice it to say, however, that the defendants have not demonstrated improper agency action. Given the purposes of the Act, the mere fact that Chase was motivated by a desire to avoid paying taxes does not indicate that the Secretary abused his discretion by acceptance of the conveyance.[4] *See Board of Comm'rs*

---

4. The Bureau of Indian Affairs' guidelines on placing title to land acquired by an individual Indian in trust with the United States do not

set forth specific objective criteria and are not published in the Code of Federal Regulations. However, the Bureau's current policy appears

*of Pawnee County, Okla. v. United States, supra.*

## STATEMENT OF A CLAIM UNDER 42 U.S.C. § 1983

Chase claims that New Town's action deprived her of her right to the beneficial use of property exempt from taxation under § 465. The District Court held that she did not state a cause of action under 42 U.S.C. § 1983 by alleging a violation of § 465 because § 1983 only creates a cause of action for redress of violations of rights secured by the Fourteenth Amendment to the United States Constitution or a federal statute enacted to enforce the Fourteenth Amendment. *Chase v. McMasters, supra*, 405 F.Supp. at 1300. It erred in so holding.

 Section 1983 creates a cause of action "not only for violations of rights conferred by federal equal civil rights laws, but for violations of other federal constitutional and statutory rights as well." *Greenwood v. Peacock*, 384 U.S. 808, 829–830, 86 S.Ct. 1800, 1813, 16 L.Ed.2d 944 (1966). *See, e. g., Sanders v. Conine*, 506 F.2d 530 (10th Cir. 1974) (extradition, 18 U.S.C. § 3182 (1970)); *Blue v. Craig*, 505 F.2d 830 (4th Cir. 1974) (Social Security Act, 42 U.S.C. § 1396a (1970)); *Gomez v. Florida State Employment Service*, 417 F.2d 569 (5th Cir. 1969) (Wagner-Peyser Act, 29 U.S.C. § 49 *et seq.* (1970)); *Bomar v. Keyes*, 162 F.2d 136 (2d Cir.), *cert. denied*, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947) (Judiciary Act, 28 U.S.C. § 411 (1940)). *See also* the discussion in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 543 n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). While subsequent cases have made it clear that a § 1983 action does not exist for every violation of a

federal statute,[5] we think it clear that the violation here, based as it is upon the "unique legal relationship between the Federal Government and tribal Indians," *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974), does state a cause of action under § 1983. Here a federal right was conferred upon a tribal Indian and the challenged local action allegedly interfered with that right and, therefore, with the relationship between the federal government and a tribal Indian. Thus, the constitutional dimension of the claim is particularly evident. Congress has the plenary and exclusive power to deal with Indian tribes, *Bryan v. Itasca County, supra*, 426 U.S. at 376 n. 2, 96 S.Ct. 2102, a power derived from federal responsibility for treaty making, U.S.Const. art. II, § 2, cl. 2, and from the commerce clause, U.S. Const. art. I, § 8, cl. 3. *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172 n. 7, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The federal government assumed a "guardian-ward" relationship with the tribal Indians, *Morton v. Mancari, supra*, 417 U.S. at 551, 94 S.Ct. 2474, and has the power to fulfill its trust obligations by protecting the Indians and their property from state interference. *Bryan v. Itasca County, supra, quoting Board of Comm'rs v. Seber*, 318 U.S. 705, 715, 63 S.Ct. 920, 87 L.Ed. 1094 (1943). Thus, the federal forum is appropriate for a claim of state or local interference with a right conferred on tribal Indians by federal law.

We hold, therefore, that Chase's claim that she was denied rights under 25 U.S.C. § 465 states a claim under 42 U.S.C. § 1983. We look now to the merits of her claim.

---

to be consistent with our holding. Where there is statutory authority, the Bureau's policy is to allow individual Indians who acquire land to convey title to the land to the United States in trust for them, unless the trust status of the land is being abused. 54 IAM 2.2.1F, Release 54–4, June 27, 1960, as modified by Commissioner's memorandum of August 3, 1960 (4346–59–317).

**5.** Not every civil right is a right derived or secured by the Constitution or laws of the Unit-

ed States for purposes of § 1983. In *Scheelhaase v. Woodbury Central Community Sch. Dist.*, 488 F.2d 237 (8th Cir.), *cert. denied*, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974), this Court held that when federal due process protections were provided, failure to renew a nontenured teacher's contract for reasons of competency and not for an impermissible constitutional reason such as race, or for assertion of constitutionally protected rights, did not state a claim under 42 U.S.C. § 1983.

When state or local actions affecting Indian land are challenged, specific treaties and federal statutes must be examined in the light of the particular actions. *Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 481 n. 17, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Mescalero Apache Tribe v. Jones, supra,* 411 U.S. at 148, 93 S.Ct. 1267; *Cass County v. United States,* 570 F.2d 737, 741 (8th Cir. 1978). Section 465 expressly states that title to land acquired under its provisions will be held in trust by the United States for the Indian or Indian tribe, and that the land will be exempt from taxation. Accordingly, any attempt by New Town to tax Chase's land would, of course, be precluded by the Supremacy Clause. U.S. Const. art. VI, cl. 2. New Town did not attempt to tax the land; it simply refused to connect the land to city water and sewer lines as long as it was held by the United States in trust and was exempt from local property taxes. Outside the special area of taxation,[6] state and local law may be applied to reservation Indians and their property unless (1) it frustrates or interferes with tribal self-government, or (2) it impairs a right granted or reserved by federal law. *Moe v. Salish & Kootenai Tribes, supra,* 425 U.S. at 483, 96 S.Ct. 1634; *Mescalero Apache Tribe v. Jones, supra,* 411 U.S. at 148, 93 S.Ct. 1267; *Organized Village of Kake v. Egan,* 369 U.S. 60, 75, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). We hold that New Town's action is precluded by the Supremacy Clause because it impaired Chase's right under § 465 to enjoy the beneficial use of land held in trust for her without the obligation to pay local taxes and thereby interfered with the operation of an important means of implementing a policy adopted by the federal government to meet its trust obligations to Indian tribes.

At the time § 465 was enacted, judicial decisions had established that lands held in trust by the United States for Indians were exempt from local taxation as federal instrumentalities, *United States v. Rickert,* 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903); *McCurdy v. United States,* 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801 (1924), and that federal jurisdiction over tribal trust lands was exclusive and precluded assertion of state or local control. *See Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832); *United States v. Kagama,* 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). When Congress provided in § 465 for the legal condition in which land acquired for Indians would be held, it doubtless intended and understood that the Indians for whom the land was acquired would be able to use the land free from state or local regulation or interference as well as free from taxation. *See Santa Rosa Band of Indians v. Kings County,* 532 F.2d 655, 666 (9th Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977).

New Town's action clearly interferred with Chase's beneficial use of the land. *Cf. Santa Rosa Band of Indians v. Kings County, supra* (Application of county land use ordinances to tribal trust lands burdens development and use of trust property and is precluded by federal preemption.). Although Chase was willing to pay the connection charge and service fees and had paid the special assessment charges, the only means by which she could obtain city water and sewer service necessary to use the land for residential purposes was to remove the land from trust status or voluntarily pay taxes.[7]

6. In recent decisions, the Supreme Court has invalidated attempts by states and localities to tax Indians and their property, utilizing a general preemption doctrine. *See, e. g., Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); *Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). The doctrine of Indian sovereignty is a "back drop" for this doctrine,

*McClanahan v. Arizona State Tax Comm'n, supra* 411 U.S. at 172, 93 S.Ct. 1257, and it is supported by the extensive federal legislative and administrative regulation of Indian tribes and reservations. *Id.* at 173–179, 93 S.Ct. 1257.

7. New Town is not an Indian community. By opening the Fort Berthold Reservation to non-Indian settlement and providing for town sites, Congress could be held to have at least implied consent to local regulation of Indian land for

We do not reach the question of New Town's duty to provide all municipal services to Indians residing on tax-exempt property since Chase has only challenged denial of one service for which she was willing to pay. She does not challenge imposition of nondiscriminatory charges for the use of municipal utilities or the practice of charging the beneficial owner of the property directly for a local improvement as North Dakota law allows when land is exempt from imposition of special assessments. *See* N.D.Cent.Code § 40–23–08 (1960).

█ Following the principle which requires us to construe federal statutes in the light most favorable to Indians, *Bryan v. Itasca County, supra* 426 U.S. at 392, 96 S.Ct. 2102, and the general federal preemption doctrine articulated by the Supreme Court and summarized above, we hold that New Town impermissively impaired and burdened a right granted under federal law to a tribal Indian. Such an action is precluded by virtue of the Supremacy Clause. *See Antoine v. Washington*, 420 U.S. 194, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975); *Santa Rosa Band of Indians v. Kings County, supra.*[8]

### IMMUNITY FROM DAMAGES

█ Local executive or administrative officials are accorded a qualified, good faith immunity from liability in damages under 42 U.S.C. § 1983. *See Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Williams v. Anderson*, 562 F.2d 1081, 1101 (8th Cir. 1977); *Curry v. Gillette*, 461 F.2d 1003, 1005 (6th Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Oberhelman v. Schultze*, 371 F.Supp. 1089, 1090 (D.Minn.), *aff'd mem.*, 505 F.2d 736 (8th Cir. 1974). Accordingly, the defendants herein are liable only if (1) they knew, or reasonably should have known, that their actions violated Chase's clearly established constitutional rights or (2) they took the action with malicious or impermissible motives of causing a deprivation of constitutional rights or other injury to Chase. *Wood v. Strickland, supra* at 322, 95 S.Ct. 992; *Williams v. Anderson, supra* 562 F.2d at 1101.

█ The right to transfer privately owned lands to the United States in trust has not been previously judicially determined. The guidelines of the Bureau of Indian Affairs are unpublished and its policies are somewhat ambiguous. Thus, we cannot say that the defendants knew or reasonably should have known that their action violated the Supremacy Clause. Moreover, the record does not disclose any

legitimate municipal purposes. *See The City of New Town North Dakota v. United States*, 454 F.2d 121, 124 (8th Cir. 1972); Act of June 1, 1910, 36 Stat. 455.

The only justification offered by New Town for its action is the fact that it may not assess Chase's property for collection of delinquent usage charges. *See* N.D.Cent.Code § 40–34–05 (1960). Whether or not New Town may enforce Chase's personal obligation to pay in the tribal courts, it may ensure collection by requiring a deposit, altering their payment schedules, or refusing further service after nonpayment. The loss of one collection method does not justify an action which so clearly infringes upon Chase's statutory right to the beneficial use of property that is exempt from general property taxes, and which would reasonably be expected to deter other Indians from seeking to have their land held in trust for them by the United States under 25 U.S.C. § 465.

8. As to Chase's other theories of recovery, we agree with the District Court that she did not present a prima facie case of racial discrimination or of denial of a "fundamental right" to city water and sewer service. The record supports the conclusion that the councilmen were primarily concerned over the tax-exempt status of Chase's land rather than her status as an enrolled tribal Indian. While it is true that the impact of their decision would fall disproportionately upon Indians if applied to all lots that the United States holds in trust for individuals, this fact alone does not suffice to show a prima facie case of racial discrimination when the motive for the action is not racial discrimination. *See Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Confed. Bands & Tribes, Etc. v. State of Wash.*, 552 F.2d 1332, 1334–1335 (9th Cir. 1977), *appeal filed*, 434 U.S. 811, 98 S.Ct. 48, 54 L.Ed.2d 69 (1977). Because the record demonstrates that New Town's action was aimed at preserving its fiscal integrity and it was apparently willing to serve Chase if she paid local taxes, its conduct did not violate her right to equal protection of the laws.

malicious, racially discriminatory or otherwise impermissible motives behind the city council's action. The council members cannot be held liable for failure to predict judicial resolution of the question and are entitled to immunity with respect to Chase's claims.

In conclusion, we have held that Chase stated a cause of action under § 1983 and that New Town's actions were precluded by the Supremacy Clause. We have further held, however, that the appellees are immune from liability for damages. In light of our decision with respect to the appellees' immunity from damages, we do not feel that it is necessary to reach the question of whether a declaratory judgment should issue.

Accordingly, we affirm the District Court's denial of relief to Chase for the reasons stated herein.