**JICARILLA APACHE TRIBE, Plaintiff,**

v.

**STATE OF NEW MEXICO, and Bill Montoya, individually and as Director of the New Mexico Department of Game and Fish, Defendants.**

No. 88–1136–M Civ.

United States District Court,
D. New Mexico.

March 6, 1990.

Nordhaus, Haltom, Taylor, Taradash & Frye, Wayne H. Bladh, Santa Fe, N.M., for plaintiff.

Norman D. Bloom, Jr., Fettinger & Bloom, Alamogordo, N.M., for Mescalero Apache Tribe.

Michael Dickman, Christopher Coppin, Asst. Atty. Gen., Santa Fe, N.M., for defendants.

### MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. Having considered the motions, responses, and being otherwise fully advised in the premises, I find that plaintiff's motion is well taken and it will be granted. Defendants' motion is not well taken and it will be denied.

### BACKGROUND

The facts of this case are not in dispute. Plaintiff is the Jicarilla Apache Tribe (Tribe) which is recognized by the federal government and organized pursuant to the Indian Reorganization Act (IRA), 25 U.S.C. § 476. The Tribe resides on a reservation in northwest New Mexico, which was originally established by Executive Order of the President on February 11, 1887. At issue in this case is the status of two parcels of land that were purchased by the Tribe and declared to be part of the reservation by the Secretary of the Interior.

The Tribe purchased one tract of land known as El Poso Ranch in January 1982 and conveyed it to the United States in trust for the Tribe in November 1984. The United States accepted the conveyance in October 1986 pursuant to § 5 of the IRA, 25 U.S.C. § 465. The Tribe also purchased a tract of land known as Horse Lake Ranch (or Theis Ranch) in June 1985, which was conveyed to the United States in trust for the Tribe in November 1987. The United States accepted the Horse Lake Ranch conveyance in March 1988 pursuant to § 5 of the IRA. On September 13, 1988, the Sec-

retary issued a proclamation formally adding the El Poso Ranch and Horse Lake Ranch parcels to the reservation pursuant to § 7 of the IRA, 25 U.S.C. § 467. The tracts of land at issue are located adjacent to the boundary of the reservation as it existed before September 1988. The funds used to purchase the land were Tribal funds.

The Tribe initiated this lawsuit seeking declaratory and injunctive relief against the State of New Mexico to prevent the State from attempting to regulate hunting and fishing on the parcels of land in question. The Tribe now moves for partial summary judgment on the issue of whether the 1988 addition by the Secretary is lawfully part of the reservation. The State contends that 25 U.S.C. § 211, which was passed in 1918 and which prohibits the expansion of Indian reservations in New Mexico except by Act of Congress, prohibits the Secretary from adding land to any reservation in New Mexico so that the land at issue is not lawfully part of the reservation. The State, therefore, asserts the right to regulate hunting and fishing by both tribal members and non-members on the land added to the reservation in 1988.

The State also contends that if the land in question is validly part of the reservation, the State may assert concurrent jurisdiction pursuant to the Supreme Court's decision in *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983), affirming 630 F.2d 724 (10th Cir.1980) after remand. The issue of concurrent jurisdiction has not yet been fully addressed by the parties and is not determined by this opinion.

## DISCUSSION

■ The question of whether the 1988 addition is validly part of the Reservation involves a conflict between 25 U.S.C. § 211 (§ 211) and 25 U.S.C. §§ 465 & 467 (§§ 5 & 7 respectively of the IRA). The relationship and effect of these two statutes, both of which govern the creation and expansion of Indian reservations, has never been adjudicated. In resolving the conflict, I am mindful that "the standard rules of statutory construction do not have their usual force in cases involving Indian law." *Mon-*

*tana v. Blackfeet Tribe*, 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1973), and that conflicting statutes related to Indian law are to be construed in a manner most favorable to Indians. *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 174, 93 S.Ct. 1257, 1263, 36 L.Ed.2d 129 (1973). It is also clear that older statutes must be read in light of more recent ones, recognizing that Congress may pass legislation that effectively negates earlier inconsistent law. *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).

■ Section 211 was passed in 1918 and provides that, "no Indian reservation shall be created nor shall any additions be made to one heretofore created within the limits of the States of New Mexico and Arizona except by Act of Congress." 25 U.S.C. § 211. Subsequently, Congress passed the IRA in 1934. Section 5 of the IRA gave the Secretary of the Interior new authority and broad discretion to acquire land for Indians which would be exempt from state and local taxation. Congress provided for the appropriation of funds with which to purchase land but also allowed acquisition through relinquishment, gift, exchange or assignment. The statute provides that title to any land acquired pursuant to § 5 of the IRA shall be taken in the name of the United States in trust for the Tribe or individual Indian for whom it is acquired. Section 5 of the IRA contains one significant proviso. It provides that no appropriated funds may be used to acquire land outside of the exterior boundary of the Navajo Reservation in Arizona or New Mexico *if* certain legislation defining the exterior borders of the Navajo Reservation, which was pending at the time § 5 became law, passed. 25 U.S.C. § 465. The pending legislation referred to in the proviso did not pass. Therefore, the proviso does not operate as a limitation of the Secretary's authority. Section 7 of the IRA gives the Secretary the authority to proclaim lands that are acquired pursuant to § 5 as new or part of existing Indian reservations. 25 U.S.C. § 467.

The State does not challenge the Secretary's actions as being improper under §§ 5 and 7 of the IRA. The federal courts have upheld the appropriateness of such a procedure. *E.g., Chase v. McMasters*, 573 F.2d 1011 (8th Cir.1978), cert. denied 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978). Rather, the State contends that § 211 prohibits the application of §§ 5 and 7 of the IRA in New Mexico. The State asserts that to find §§ 5 and 7 of the IRA applicable in New Mexico requires the court to find that the IRA repeals § 211 by implication. Repeals by implication are not favored. *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974), (citing *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)). "When there are two Acts upon the same subject, the rule is to give effect to both, if possible.... The intention of the legislature to repeal 'must be clear and manifest.' " *Id.* 417 U.S. at 551, 94 S.Ct. at 2483 (quoting *United States v. Bordon Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939)). The State argues that no clear intent to repeal § 211 is present in the IRA; therefore, § 211 operates to prohibit the Secretary's actions under the IRA in New Mexico.

The State's argument fails to take the statutory language of the IRA, contemporaneous legislation, pertinent legislative history, and subsequent action by Congress pursuant to the IRA into account. Whether framed as implicitly repealing or as choosing not to carry forward some of the prohibitions of § 211, Congress made clear its intent that the Indian tribes of New Mexico were eligible for the acquisition of land under §§ 5 and 7 of the IRA. The IRA does not alter § 211's prohibition against the creation or expansion of Indian reservation by Executive Order of the President; a practice that was prevalent when § 211 was enacted.

Both parties have cited portions of the legislative history of the IRA and § 211 to support their arguments. Not surprisingly, each side is able to cite statements from various hearings to show that §§ 5 and 7 would or would not change the status quo by granting new powers to the Secretary of the Interior. I do not find these isolated statements particularly helpful to determine congressional intent. The statutory language and action taken by Congress is more reliable. Cf. *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951).

The Tribe argues that the proviso in § 5 of the IRA is evidence of Congress' intent that § 5 apply to the tribes in Arizona and New Mexico, with the possible exception of the Navajo tribe. The State contends, weakly, that it is "plausible" that the proviso was not intended to create an exception to § 5, but rather to create an exception to § 211 for the Navajos. However, the State's argument does not take into account that the proviso dealt only with the acquisition of land by the Navajos using Congressionally appropriated funds. The proviso did not affect acquisition by relinquishment, gift, exchange, or assignment. I am convinced that, given the narrow scope of the proviso, it was intended to act as an exception to § 5 of the IRA, not as an exception to § 211. Congress would have no reason to carve such a narrow prohibition against the use of funds under § 5 if it intended all along to prohibit the Secretary's actions in New Mexico and Arizona under § 211. The Tribe also points to 25 U.S.C. §§ 463 and 473 (§§ 3 and 13 of the IRA respectively) where Congress expressly stated that certain states and tribes would or would not be subject to particular sections of the IRA. Given the precise terms with which Congress drafted the IRA, I am persuaded that Congress intended that the provisions of §§ 5 and 7 apply to all tribes unless expressly excluded.

The State relies heavily on the argument that the purpose of § 211 was to afford Arizona and New Mexico the protection already possessed by other states to preserve their tax base; a concern that the Secretary should not be allowed to circumvent through §§ 5 and 7 of the IRA. However, as the Tribe points out, when Congress passed the IRA in 1934, it was well aware of the tax burden to states containing Indian reservations. The Johnson–O'Malley Act, 25 U.S.C. § 452 (enacted in April 1934) addressed the problem by providing reimbursement for state and county

governments, in lieu of taxation, for services performed for Indians. It is appropriate to consider contemporaneous Acts of Congress to determine the intended effect of legislation on prior legislation. *Morton v. Mancari, supra,* 417 U.S. at 548, 94 S.Ct. at 2481. The State's argument resurrects a concern that was already considered and addressed by Congress when the IRA was enacted. The passage of the Johnson–O'Malley Act contemporaneous with the passage of the IRA supports the Tribe's argument that Congress did not mean to exclude New Mexico from the provisions of the IRA.

Further support for the Tribe's position is evidenced by the version of the IRA that Congress chose *not* to enact. The conference committee rejected the House version of the Bill that would have prohibited the use of appropriated funds to acquire additional land for any tribe in Arizona or for the Navajo Tribe in New Mexico. H.Rep. 1804, 73rd Cong.2d Sess. at 3 (1934). The State now seeks to impose limits that were rejected by Congress when it passed the IRA.

Finally, it is informative to note subsequent action taken by Congress pursuant to the appropriation provisions of § 5 of the IRA. Congress passed the first general appropriation act for the Interior Department following the IRA in 1935. Congress appropriated $1,000,000.00 for land acquisition under § 5 of the IRA but provided that none of the funds could be used for the acquisition of land outside of existing reservation boundaries in Arizona or Wyoming. Act of May 9, 1935, Chap. 101, 49 Stat. 176, 183. In 1936, Congress again limited the use of IRA funds in acquiring land outside of existing reservation boundaries in certain states. New Mexico was one of the states where the limitation was imposed. Act of June 22, 1936, Chap. 691, 49 Stat. 1757, 1765. Between 1937 and 1974, Congress passed similar appropriations with limitations that applied in various western states. *E.g.,* Act of August 31, 1974, 88 Stat. 803, 810 (Ariz., Cal., Col., N.M., S.D. & Utah). Between 1974 and 1988, Congress appropriated funds without limiting where the funds could be used. *E.g.,* Act of December 23, 1975, 89 Stat.

977, 985; Act of October 12, 1984, 98 Stat. 1847, 1849. If Congress understood or intended the prohibition of § 211 to supersede §§ 5 and 7 of the IRA in New Mexico and Arizona, there would have been no need to limit the use of appropriated funds in those states.

In fact, not including the additions to the Jicarilla Reservation at issue here, the Secretary of the Interior acquired a total of 71,090.1 acres of land under § 5 of the IRA between 1980 and 1988 for the Mescalero Apache Tribe and the Pueblos of Laguna, Acoma, Santa Ana, and Isleta and formally added those lands to the respective reservations pursuant to § 7. At no time since the passage of the IRA, has Congress ever attempted to broadly limit the authority of the Secretary under the IRA in the manner which the State now urges. When Congress thought it appropriate to limit the Secretary's acts in New Mexico, the intent was made clear in specific legislative language.

## CONCLUSION

For all of the above reasons, I find that the actions of the Secretary under §§ 5 and 7 of the IRA were not prohibited by 25 U.S.C. § 211. Therefore, the motion for partial summary judgment by the Tribe is granted.

The remaining issue in this case is whether the State has concurrent jurisdiction to regulate hunting and fishing on the reservation pursuant to *N.M. v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983). Pursuant to my order of July 13, 1989, the deadline for submission of a combined Pretrial Order shall be 30 days after the entry of this decision. The same deadline shall apply to pretrial motions. The trial date for this case is set for June 11, 1990.

IT IS SO ORDERED.