State of **SOUTH DAKOTA**, City of Oacoma, and Lyman County, Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF the INTERIOR; Aurene Martin, Acting Assistant Secretary–Indian Affairs; Bill Benjamin, Acting Regional Director, Great Plains Regional Office, BIA; and Cleve Her Many Horses, Superintendent, Lower Brule Agency, BIA, Defendants.**

No. CIV. 00–3026–RHB.

United States District Court, D. South Dakota, Central Division.

April 19, 2004.

John Pl. Guhin, Pierre, SD, Paul E. Jensen, Oacoma/Lyman Co., Winner, SD, for Plaintiff.

Cheryl Schrempp Dupris, Pierre, SD, Judith Rabinowitz, Juneau, AK, for Defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

The state of South Dakota, city of Oacoma, and Lyman County ("plaintiffs"), filed suit in this Court seeking declaratory and injunctive relief to prevent the defendants ("Interior") from taking a 91–acre parcel of land ("Oacoma parcel") into trust for the Lower Brule Sioux Tribe ("the Tribe") pursuant to Section 5 of the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. § 465. Plaintiffs claim that the unfettered authority bestowed upon the Secretary of the United States Department of the Inte-

rior ("Secretary" or "Agency") via 25 U.S.C. § 465 equates to an unconstitutional delegation of legislative authority to the executive branch. In the alternative, plaintiffs contend that the decision to take the Oacoma parcel into trust was arbitrary and capricious because the Agency failed to consider the requisite factors as listed in 25 C.F.R. pt. 151.

Interior argues that 25 U.S.C. § 465 is constitutional because the text and underlying policy of the statute establish sufficient boundaries on the Secretary's discretion and intelligible principles for courts to consider when reviewing a decision by the Secretary under Section 5. Interior also maintains that the decision was a reasonable one made after considering all relevant factors. Accordingly, Interior asks the Court to declare § 465 constitutional and affirm the Agency's decision to take the Oacoma land into trust.

## PROCEDURAL HISTORY

In 1990, the Tribe filed an application with the Secretary to have the Oacoma parcel taken into trust pursuant to 25 U.S.C. § 465. The Tribe's application was subsequently approved. The state of South Dakota and city of Oacoma appealed the decision to the Interior Board of Indian Appeals; however, the appeals board dismissed the appeal claiming it lacked jurisdiction to review decisions of the Assistant Secretary—Indian Affairs. On November 30, 1992, the Oacoma parcel was transferred into trust for the Tribe.

After the adverse decision by the Interior Board of Indian Appeals, the state and city filed suit in this Court requesting review of the Agency's decision. This Court determined that it was without jurisdiction to review the decision for the reason that the Quiet Title Act, 28 U.S.C. § 2409a, forbids suits under the Administrative Procedures Act, 5 U.S.C. § 706, when plaintiffs, who do not claim a property interest in land, seek review of a decision of the Secretary to take land into trust for Indians pursuant to 25 U.S.C. § 465. *South Dakota v. United States Dep't of the Interior,* CIV. 92–3023 (D.S.D.1994). This Court also concluded that 25 U.S.C. § 465 was not an unconstitutional delegation of legislative power to the executive branch. The state and city then appealed that decision to the Eighth Circuit Court of Appeals. The Eighth Circuit panel, in a plurality opinion with Judge Diana Murphy writing a dissenting opinion, determined that 25 U.S.C. § 465 equated to an unconstitutional delegation of legislative power and reversed this Court's decision. *South Dakota v. United States Dep't of the Interior,* 69 F.3d 878 (8th Cir.1995) ("*Oacoma I*"). Interior then filed a petition for a writ of certiorari with the United States Supreme Court. The Supreme Court granted Interior's writ, vacated the decision of the Eighth Circuit, and remanded the matter back to the Secretary in light of Interior's enactment of regulations specifically permitting judicial review of agency decisions that take land into trust for Indians. *United States Dep't of Interior v. South Dakota,* 519 U.S. 919, 117 S.Ct. 286, 136 L.Ed.2d 205 (1996); *see* 25 C.F.R. § 151.12(b) (stating that title will not transfer for 30 days when the Secretary decides to take land into trust). On December 18, 1996, the Eighth Circuit recalled its mandate, vacated its earlier judgment, and remanded the matter to this Court. *South Dakota v. United States Dep't of the Interior,* 106 F.3d 247 (8th Cir.1996). On December 24, 1996, this Court, complying with the Circuit Court's order, remanded the matter to the Agency for reconsideration of its decision. Accordingly, the Oacoma parcel was removed from trust status effective December 24, 1996.

## FACTS

On September 9, 1997, the Tribe issued Resolution 97–408 requesting that Interior take the Oacoma parcel into trust. Administrative Record ("AR") 17. A copy of the resolution was forwarded to the Office of the Solicitor in Washington, D.C., however, a letter by Interior indicated the Tribe needed to complete an amended resolution setting forth the purposes for which the land will be used. AR 20. A supplemental resolution was issued on September 25, 1997, stating that the Oacoma land will be used "to enhance the economic development of the tribe, and to provide a nexus to the Oacoma area which is of historical importance to the tribe." AR 29.

On February 12, 1998, the acting superintendent of the Bureau of Indian Affairs ("BIA"), Lower Brule Agency, sent letters to plaintiffs notifying them that the Tribe submitted an application to have the Oacoma parcel placed in trust and solicited comments from plaintiffs on the application. AR 311–21. On March 13, 1998, the state issued a letter in opposition to the Tribe's application. AR 326–618. The city and county submitted a similar letter on that same date. AR 619–744. The Tribe then issued a letter to the acting superintendent in response to plaintiffs' letters. AR 774–822.

On June 30, 1999, the regional director of the Great Plains Regional Office of the BIA Office of Trust Responsibilities, recommended that the acting secretary place the Oacoma parcel in trust status. AR 837. Upon review, however, the regional director noted that there were numerous deficiencies in the Tribe's application. AR 930–44. To this end, the BIA informed the regional director that additional information and further elaboration on various factors was needed before the BIA could process the Tribe's application. AR 1259–60. On February 18, 2000, the regional director issued a memorandum decision purporting to comply with the BIA's request for additional analysis of the Tribe's application. AR 1271–74. The regional director also recommended the deputy commissioner of indian affairs grant trust status to the Oacoma parcel. *Id.* Finally, after requesting and receiving additional information relevant to the application, the BIA issued a memorandum substantively addressing the 25 C.F.R. pt. 151 factors that the Secretary is required to evaluate when considering whether an application for fee-to-trust status should be granted. AR 1391–97. In concurrence, the deputy commissioner determined that title to the Oacoma parcel should be transferred to the United States in trust for the Tribe. AR 1397. On May 18, 2000, Interior published in the Federal Register notice of its intent to transfer the Oacoma parcel into trust for the Tribe. AR 1409–10; *see* 65 Fed.Reg. 31,594 (Dep't of the Interior May 18, 2000).

On June 16, 2000, plaintiffs filed suit against Interior, requesting declaratory and injunctive relief to prevent transfer of the property into trust for the Tribe. AR 1421–44. After litigation commenced, this Court stayed the matter pending completion of an environmental assessment. On December 14, 2000, in accordance with the environmental assessment, the deputy commissioner issued a finding of no significant impact ("FONSI"). AR 1484. A Notice of Availability was then posted at the Tribe's office and published in *The Chamberlain–Oacoma Register* weekly newspaper. AR 1551, 1553. On January 18, 2001, the deputy assistant secretary ratified its earlier decision to include information on the environmental assessment and FONSI. AR 1559. The notice of ratification decision was published in the Federal Register on January 26, 2001. AR 1566–67.

On March 19, 2001, plaintiffs submitted an amended complaint. Then, on July 23, 2001, the Tribe filed a motion to intervene in this matter. This Court denied the Tribe's motion to intervene. The Tribe appealed that Order and the denial of intervention was affirmed by the Eighth Circuit Court of Appeals. *South Dakota v. United States Dep't of the Interior,* 317 F.3d 783 (8th Cir.2003). Plaintiffs filed a motion for summary judgment on June 16, 2003. Interior filed a cross-motion for summary judgment on December 15, 2003. On January, 21, 2004, the Tribe filed a brief of amicus curiae in support of Interior's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Supreme Court has instructed that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (citation omitted).

The teaching of *Matsushita* was further articulated by the Supreme Court in *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 468, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992), where the Court said, "*Matsushita* demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision." The Court expounded on this notion by reiterating its conclusion in *Anderson* that, "[s]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Eastman Kodak,* 504 U.S. at 468 n. 14, 112 S.Ct. at 2083 n. 14 (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). To survive summary judgment the evidence must reasonably tend to prove the plaintiff's theory. *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 768, 104 S.Ct. 1464, 1473, 79 L.Ed.2d 775 (1984).

## DISCUSSION

Plaintiffs have raised two issues for review by the Court: (1) whether the deci-

sion to grant trust status was arbitrary and capricious; and (2) whether Section 5 of the IRA, 25 U.S.C. § 465, is an unconstitutional delegation of legislative authority. Interior disputes plaintiffs' claims. The Court treats the claims in plaintiffs' amended complaint that were not addressed in the summary judgment briefs as conceded.

## ARBITRARY AND CAPRICIOUS

■■■■ This Court reviews agency action under the Administrative Procedures Act to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994). When determining whether an agency's decision is arbitrary and capricious the Eighth Circuit has stated:

> [T]he court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*South Dakota v. Ubbelohde,* 330 F.3d 1014, 1031 (8th Cir.2003) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971), *overruled on unrelated grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977)). In order for the agency's decision to pass scrutiny it must explain a rational connection between the choice made and the facts found. *Id.* (citations omitted). "[A] court may find an action to be arbitrary and capricious only when there is no rational basis for the policy choice." *Id.* at 1032.

25 C.F.R. § 151.1 "set[s] forth the authorities, policy, and procedure governing the acquisition of land by the United States in trust status for individual Indians

and tribes." The relevant section of these regulations is 25 C.F.R. § 151.11, which deals with off-reservation acquisitions of land. Section 151.11 sets forth the criteria the Secretary must consider when determining whether a request for the acquisition of land in trust should be granted. It also expressly incorporates for consideration several of the criteria listed in § 151.10. *See* 25 C.F.R. § 151.11(a) (indicating that the criteria listed in § 151.10(a) through (c) and (e) through (h) shall also be considered by the Secretary).

Plaintiffs object to the Agency's decision to grant that Tribe's application for a variety of reasons. These objections include: (1) the analysis of the criteria listed in 25 C.F.R. §§ 151.10 and 151.11 was flawed because it failed to address relevant evidence and failed to explain how the facts found supported the choice made, (Pls.' Br. Supp. Summ. J. at 34); (2) the decision failed to discuss § 151.3(A)(3), which in this case specifically pertains to the finding that acquisition of the land will facilitate economic development of the Tribe, *Id.* at 53; (3) the decision was a clear error in judgment, *Id.* at 54; (4) the decision failed to adhere to the process which was promised to the Supreme Court, *Id.* at 55; (5) the construction of the Circle of Tipis obviates the need to place the land in trust status, *Id.* at 60; and (6) there is no evidence supporting the decision to place in trust status the acreage in excess of the nine acres on which the Circle of Tipis sits, *Id.* Interior contends the Agency's decision was reasonable and is supported by both the memorandum decision and the Administrative Record. (Defs.' Mem. Opp. Summ. J. at 1–24.)

### 25 C.F.R. § 151.10(b)

■■■ Subsection 151.10(b) states that the Secretary shall consider "[t]he need of the individual Indian or the tribe for additional land." The Secretary indicated that the

Tribe needed the Oacoma parcel "to diversify the tribe's economic development, expand their [sic] trust land base, and to generate much needed income for the Lower Brule Sioux Tribe for use in providing services to tribal members." AR 1394. The Secretary further said that the land currently encompassed by the Lower Brule Sioux Indian Reservation: (1) is diminished in size from what it once was; (2) includes approximately 27,137 acres of wasteland; and (3) includes approximately 40,000 acres of land owned by non-Indians. *Id.* The Secretary also noted that the Oacoma parcel is "more attractive to business[es] and would enhance the tribe[']s economic rehabilitation and support self-sufficiency." *Id.* Plaintiffs argue, however, that the analysis of this criterion was incomplete because the Secretary failed to discuss why the Tribe needs to hold the Oacoma parcel in *trust*.

Plaintiffs assert that "25 C.F.R. § 151.10(b) demands that the 'Governing Decision' consider the 'need of the tribe for additional land' to be in trust." (Pls.' Br. Supp. Summ. J. at 39.) They further claim that the Tribe already owns the land in fee and that form of ownership is sufficient for the purposes in which they plan to use the land. (Pls.' Br. Supp. Summ. J. at 39.) In reading § 151.10(b), however, there is no mention of the word "trust," nor is there any indication that the Secretary must evaluate an applicant's request in such a manner.

Plaintiffs are essentially arguing that the Secretary's decision should be reversed because it fails to discuss the benefits of holding land in trust, as opposed to fee, status. The IRA, which authorizes the United States to acquire land in trust for Indians, was enacted for the very reasons plaintiffs want explained. Most notably, it was enacted "to safeguard Indian lands against alienation from Indian ownership and against physical deterioration."

H.R. 7902, 73rd Cong., tit. III, § 1 (1934); *see also Chase v. McMasters,* 573 F.2d 1011, 1016 (8th Cir.1978) (stating the purpose of the IRA is to rehabilitate the Indian's economic viability and halt the loss of their lands that occurred as a result of an inability to manage allotted land). Plaintiffs expansive reading of § 151.10(b) is unpersuasive. Regulation § 151.10(b) requires that the Secretary must merely explain why the Tribe needs the additional land. As indicated above, and as evidenced in the Secretary's decision, the Secretary listed several reasons why the Tribe needs the Oacoma parcel. To require the Secretary to discuss the history and purpose of the IRA each time the United States is requested to take land into trust for an individual Indian or tribe is not required and would be unnecessary. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the criterion listed in § 151.10(b). There is a rational basis for this decision.

### 25 C.F.R. § 151.10(c)

Subsection 151.10(c) states that the Secretary shall consider "[t]he purposes for which the land will be used." The Secretary stated that the land was originally scheduled to promote economic development through the construction of an industrial park. AR 1395. The Tribe has since proposed that the land will be used as a Native American Scenic Byway ("Byway"). *Id.* The opinion also notes that the Tribe submitted a business plan for the Byway project and that the Tribe is awaiting federal funding. *Id.* Plaintiffs argue that the Secretary's discussion of subsection (c) is deficient because it did not address contentions submitted by plaintiffs and because "it did not consider the high probability that the tribe plans to use the land for gambling." (Pls.' Br. Supp. Summ. J. at 44–47.)

On December 15, 1998, the Honorable William Janklow, then Governor of the State of South Dakota, sent a letter to the Secretary stating that he supports the Tribe's new business plan in light of its assurances that it would not conduct gaming on the Oacoma parcel. AR 827. The Secretary made note of this letter in the memorandum decision (AR 1395), however, plaintiffs claim this "glancing allusion" is insufficient for purposes of determining whether "the *agency* has found that gambling is an intended use." (Pls.' Br. Supp. Summ. J. at 45–47.) In support of this contention, plaintiffs reference several statements by Tribe Chairman Michael Jandreau that indicate gaming on the Oacoma parcel is a consideration. *Id.*

Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Mausolf v. Babbitt,* 125 F.3d 661, 667 (8th Cir.1997) (citation omitted). Additionally, "[i]f the administrative record contains evidence that supports the positions of both the agency and the party seeking relief, the agency is entitled to rely on its experts' tests and observations, and decisions made in such reliance are not arbitrary and capricious." *Cent. S.D. Coop. Grazing Dist. v. Sec'y of the United States Dep't of Agric.,* 266 F.3d 889, 899 (8th Cir.2001) (citation omitted). The Secretary addressed the purposes for which the Tribe intends to use the Oacoma parcel. The Secretary also noted that the letter from Governor Janklow indicated the Tribe assured him that they would not conduct gaming on the land. It appears to this Court that what the Secretary is indicating is that it does not consider gaming to be a purpose for which the land will be used. Furthermore, even though there is evidence in the record that indicates the Tribe considered conducting gaming on the Oacoma parcel,

it does not overshadow the purposes expressly set forth in the Tribe's business plan. *See Carcieri v. Norton,* 290 F.Supp.2d 167, 178 (D.R.I.2003) (affirming agency's decision to take land into trust even though there was evidence in the record that indicated the land might be used for gambling purposes); *see also City of Lincoln City v. United States Dep't of Interior,* 229 F.Supp.2d 1109, 1124 (D.Or. 2002) (stating that the Secretary "does not have the authority to impose restrictions on a Tribe's future use of property taken into trust, or to acquire fee-to-trust property conditionally").

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721, permits gaming on lands acquired in trust if the Secretary, and the governor of the state where the gaming is to take place, determine that it "would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community." 25 U.S.C. § 2719(a). Plaintiffs draw attention to the possibility the Tribe may conduct gaming on the Oacoma parcel by referencing the statements of Chairman Jandreau and Governor Janklow. The possibility the Tribe may conduct gaming on the Oacoma parcel, however, is irrelevant to the present discussion concerning the Secretary's decision to take the land into trust. Although gaming on the Oacoma parcel may develop into a cognizable issue between the parties, it is a matter that must be addressed on another day. *See* 25 U.S.C. § 2719(c) (stating that "[n]othing in this section shall affect or diminish the authority and responsibility of the Secretary to take land into trust"). It should be noted, however, that this Memorandum Opinion is not to be construed as endorsing or permitting gaming on the Oacoma parcel. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the crite-

rion listed in § 151.10(c). There is a rational basis for this decision.

### 25 C.F.R. § 151.10(e)

 Subsection 151.10(e) states that "[i]f the land to be acquired is in unrestricted fee status, [the Secretary shall consider] the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls." The Secretary noted that the Oacoma parcel generates $2,587.02 in tax revenue for plaintiffs. AR 1396. The Secretary determined that the loss of such revenues would not have a significant impact on the local governments. *Id.* Plaintiffs argue that this analysis is insufficient because the decision failed to take into account plaintiffs' proposed losses to the local governments if a truck stop or residential properties were to occupy the land. (Pls.' Br. Supp. Summ. J. at 47–48.) Again, this Court finds such argument immaterial to the Secretary's decision.

Plaintiffs submitted to the Secretary an analysis of the tax losses if there were businesses on the Oacoma parcel. In the memorandum decision, however, the Secretary reported that there are no businesses on the Oacoma parcel. Plaintiffs' assertion that the memorandum decision was arbitrary and capricious because it did not include the projected tax losses if hypothetical businesses were later constructed on the Oacoma parcel is without merit. A reasonable interpretation of section 151.10(e) is that the Secretary must consider the impact of removing the land from the tax rolls at the time the application is filed. It would be illogical to require the Secretary to speculate as to every possible economic use for land that an applicant is requesting the Secretary place in trust. *See Lincoln City,* 229 F.Supp.2d at 1125 (stating that the BIA need not speculate about revenues from potential ventures). Thus, the memorandum decision satisfactorily indicates that the Secre-

tary reasonably considered the criterion listed in § 151.10(e). There is a rational basis for this decision.

### 25 C.F.R. § 151.10(f)

 Subsection 151.10(f) states that the Secretary shall consider the "[j]urisdictional problems and potential conflicts of land use which may arise." In the memorandum decision, the Secretary noted that the Tribe did not expect any problems or conflicts with the use of the Oacoma parcel. AR 1396. In support of this conclusion the Secretary referenced an earlier land acquisition that was west of the Lower Brule Reservation which did not cause any problems. *Id.* The memorandum also indicates the BIA will supply law enforcement for the Oacoma parcel. *Id.* Plaintiffs claim the memorandum decision is arbitrary and capricious because it "entirely ignored" the information they provided regarding jurisdictional problems. (Pls.' Br. Supp. Summ. J. at 48.)

"The regulations only require that the BIA undertake an evaluation of potential problems." *Lincoln City,* 229 F.Supp.2d at 1124. The Secretary considered the fact that minimal problems were created by a previous acquisition of off-reservation property and that the Tribe did not expect any problems with the acquisition of the Oacoma parcel. AR 1396. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the criterion listed in § 151.10(f). There is a rational basis for this decision.

### 25 C.F.R. § 151.10(g)

 Subsection 151.10(g) states that "[i]f land to be acquired is in fee status, [the Secretary shall consider] whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status." The Secretary determined that the BIA will be staffed and equipped to administer the Oacoma property. AR

1396. This includes assisting in all real estate functions. *Id.* The Secretary also noted that the Great Plains Regional Office will provide technical support to the Tribe. *Id.* Plaintiffs again contend that because the memorandum decision did not included an exhaustive analysis of the benefits and drawbacks of placing the land in trust, the Secretary did not consider the negative effects, and hence, the decision is arbitrary and capricious. (Pls.' Br. Supp. Summ. J. at 50–51.)

The Secretary is only required to consider whether the BIA is equipped to handle the additional duties that will arise if the property is taken into trust. The Secretary considered these factors and determined the BIA will be able to handle these additional duties. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the criterion listed in § 151.10(g). There is a rational basis for this decision.

### 25 C.F.R. § 151.11(b)

Subsection 151.11(b) states:
The location of the land relative to state boundaries, and its distance from the boundaries of the tribe's reservation, shall be considered as follows: as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition. The Secretary shall give greater weight to the concerns raised pursuant to paragraph (d) of this section.

The memorandum decision indicates that the considerations set forth in subsection (b) were addressed previously in the decision. AR 1397. The decision reports that the Oacoma parcel is not located within the boundaries of the reservation, but is "approximately eight miles south of the current Lower Brule Sioux Indian Reservation." AR 1392. Plaintiffs argue that because the Secretary did not mention the

standard set forth in paragraph (b), the decision to grant the Oacoma parcel trust status is arbitrary and capricious. (Pls.' Br. Supp. Summ. J. at 52–53.)

The memorandum decision establishes that the Oacoma parcel will help the Tribe better develop its economy because it is located on the interstate and more attractive to businesses. AR 1394. Plaintiffs have submitted no information negating the Secretary's finding on this issue. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the criterion listed in § 151.11(b). There is a rational basis for this decision.

### 25 C.F.R. § 151.3(a)(3)

Subsection 151.3(a)(3) states that land may be acquired in trust status for a tribe "[w]hen the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing." The Secretary determined that the Byway will advance the economic growth of the Tribe. AR 1393–94. Plaintiffs argue that the decision is arbitrary and capricious because it does not analyze the economic growth of the Oacoma parcel if held in trust status versus fee status. (Pls.' Br. Supp. Summ. J. at 53–54.)

The regulation merely requires the Secretary to "consider" whether the acquisition is "necessary." Plaintiffs argue that the decision is deficient because it fails to explain why holding the land in trust is more beneficial than holding it in fee. However, the Court has determined that the Secretary is not required to delve into an in-depth discussion of the purposes behind enactment of the IRA each time an application to acquire land in trust status is considered. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the criterion

listed in § 151.3(a)(3). There is a rational basis for this decision.

### Clear Error In Judgment

 Subsection 151.11(c) states that "[w]here land is being acquired for business purposes, the tribe shall provide a plan which specifies the anticipated economic benefits associated with the proposed use." Plaintiffs claim the Secretary's decision is arbitrary and capricious because it amounts to a clear error of judgment. (Pls.' Br. Supp. Summ. J. at 54–55.) In support of this contention plaintiffs argue the business plan submitted by the Tribe is inadequate because it does not include a cost-benefit analysis. Plaintiffs also point out that the plan could not provide the agency any guidance because the Secretary noted the plan was "strictly speculative."

The Tribe issued a detailed business plan setting forth the intricacies of the Byway. AR 127–296. The plan also includes projections on attendance and the economic impact the Byway will have on the community. AR 289. The decision reported that the Tribe's plan was speculative, however, because the plan was created under the premise the project would receive federal funding from an agency which may or may not provide funding. AR 1397. Plaintiffs claim this amounts to a clear error of judgment. The Court disagrees. Although the plan may not be as complete as plaintiffs would like, that is not the standard by which a court reviews agency action. The plan stated the anticipated economic benefits in conjunction with creation of the Byway. Thus, the memorandum decision satisfactorily indicates that the Secretary reasonably considered the criterion listed in § 151.11(c). There is a rational basis for this decision.

### Broken Promises

 Plaintiffs also contend the decision should be reversed because Interior did not adhere to the representations it made to the Supreme Court. (Pls.' Br. Supp. Summ. J. at 55–60.) Specifically, plaintiffs claim they were denied due process because Interior denied them a "full and fair hearing of its claims." *Id.* at 58. Review of Interior's petition for writ of certiorari reveals that Interior's arguments for remand were based on changes to the regulations which now provide for judicial review of Agency decisions as they pertain to acquisitions of land in trust. However, at no place in Interior's submissions to the Supreme Court is it indicated that plaintiffs will be provided a "hearing." The regulations were amended to supply state and local governments notice and an opportunity "to provide written comments as to the acquisition's potential impacts on regulatory jurisdiction, real property taxes and special assessments." Land Acquisitions, 61 Fed.Reg. 18,082 (Dep't of the Interior April 24, 1996) (to be codified at 25 C.F.R. § 151.12(b)). The Secretary provided plaintiffs notice and an opportunity to submit comments on the acquisition, which they did. Thus, having found that Interior complied with the regulations and adhered to its assertions to the Supreme Court, plaintiffs' argument is dismissed as being without merit.

 Plaintiffs remaining arguments essentially reiterate that which they advanced throughout their briefs in support of, and in opposition to, summary judgment. Plaintiffs contend the decision is deficient in that it fails to explain why the acreage on which the Circle of Tipis sits, and the remaining acreage, needs to be placed in trust for the Tribe. (Pls.' Br. Supp. Summ. J. at 60–61.) Having already explained why the Secretary need not explain the benefits of holding land in trust versus fee status, plaintiffs' arguments are dismissed as being without merit.

Finally, with regard to Interior's motion for summary judgment, it is contended

that the Secretary's decision satisfactorily addressed all relevant criteria as listed in 25 C.F.R. pt. 151. (Def's Mem. Supp. Summ. J. at 15–30.) Plaintiffs do not rebut this contention with regard to 25 C.F.R. §§ 151.10(a), (h), and 151.11(d). Furthermore, review of these uncontested criteria indicates they were sufficiently considered by the Secretary, and a rational conclusion was reached.

## CONSTITUTIONALITY OF 25 U.S.C. § 465

A more expansive view of the substantive history of this matter may reveal the peculiar nature of the issue the parties contest. This Court addressed the constitutionality of 25 U.S.C. § 465 when the issue was raised by the state of South Dakota and city of Oacoma over ten years ago. *South Dakota,* CIV. 92–3023 at 19–21. The Court explained that the policy behind Congress's enactment of the IRA was "to acquire land for Indians to help reverse the effects of the Indians' loss of land under the allotment policy and to help Indians become more self-sufficient, both economically and otherwise." *Id.* at 21. Thus, the Court determined that the general policy and boundaries set forth were sufficient to guide the Secretary in executing the authority that Congress had delegated. As a result, this Court held that § 465 was constitutional.

On appeal, the Eighth Circuit reversed that decision. Writing for the majority, Circuit Judge (now Chief Judge) Loken, stated that "[t]here are no perceptible 'boundaries,' no 'intelligible principles,' within the four corners of the statutory language that constrain this delegated authority—except that the acquisition must be 'for Indians.'" *Oacoma I,* 69 F.3d at 882. The panel majority remarked that the Secretary's "actions under § 465 may not be judicially reviewed because the statute commits them entirely to agency discretion." *Id.* at 881–82. The court said

that this factor necessitated closer scrutiny of plaintiffs' contentions. *Id.* at 883. The court also remarked that "[t]he legislative history of § 465 suggests that Congress did not intend to delegate unrestricted power to acquire land 'for Indians.'" *Id.* The panel majority maintained:

> Those who drafted § 465 failed to incorporate the limited purpose reflected in the legislative history. Presumably, they either drafted poorly or ignored the delegation issue. The agency that received this inartful delegation then used the absence of statutory controls to claim unrestricted, unreviewable power. The result is an agency fiefdom whose boundaries were never established by Congress, and whose exercise of unrestrained power is free of judicial review. It is hard to imagine a program more at odds with separation of powers principles.

*Id.* at 884–85.

Dissenting from the majority, Circuit Judge Murphy remarked that "the Supreme Court has consistently upheld statutes involving broad delegations of authority." *Id.* at 886 (Murphy, J., dissenting). She further remarked that the delegation doctrine has "evolved into a tool of statutory construction, by which reviewing courts give 'narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional.'" *Id.* (quoting *Mistretta v. United States,* 488 U.S. 361, 373 n. 7, 109 S.Ct. 647, 655 n. 7, 102 L.Ed.2d 714 (1989)). Finally, with reference to the majority's concern that § 465 could conceivably permit the Secretary "to provide a lake home for a politically faithful tribal officer," Judge Murphy held that those fears were insufficient to "strike down an act of Congress." *Id.* at 889.

After this adverse decision, Interior amended § 151.12(b) to provide individuals such as plaintiffs with notice of administra-

tive decisions to acquire land in trust pursuant to the IRA. *See* Land Acquisitions, 61 Fed.Reg. 18,082 (providing for a 30–day waiting period to allow for judicial review of decision). Interior then filed a writ of certiorari with the United States Supreme Court requesting that the matter be remanded to the Secretary in light of its provision of notice and time in which parties may obtain judicial review in such matters. Pet. for Cert. 15. The Supreme Court granted the writ, vacated the decision of the Eighth Circuit, and ordered that the case be remanded to the Secretary to reconsider his administrative decision. *Interior*, 519 U.S. at 919–20, 117 S.Ct. at 286. Accordingly, after traversing various procedural hurdles at the administrative level, the issue of whether § 465 is an unconstitutional delegation of legislative power is again before this Court.

### Delegation of Power

■■■ Plaintiffs argue § 465 amounts to an unconstitutional delegation of legislative power because a plain reading of the statute fails to delineate its "general policy." They also assert that the legislative history of § 465 cannot be referenced when attempting to discern Congress's "general policy" because it does not equate to a "legislative act." Plaintiffs further contend that the statute is deficient in that it fails to set "boundaries" on the Secretary's authority. Consequently, in order to resolves these issues, the Court must rely on the rules of statutory construction and interpret the text and history of § 465 accordingly.

■■■ Plaintiffs' request of the Court to declare § 465 unconstitutional is a grave and delicate duty. *Blodgett v. Holden*, 275 U.S. 142, 148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1928) (Holmes, J., concurring) (stating that "to declare an Act of Congress unconstitutional, . . . is the gravest and most delicate duty that this Court is called on to perform"). "The cardinal principle of stat-

utory construction is to save and not to destroy." *United States v. Menasche*, 348 U.S. 528, 538, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (citation omitted). Acts of Congress are presumed to be constitutional. *Rust v. Sullivan*, 500 U.S. 173, 191, 111 S.Ct. 1759, 1771, 114 L.Ed.2d 233 (1991) (citation omitted). Finally, "ambiguous statutes passed for the benefit of Indian tribes are to be interpreted in a light most favorable to Indians." *Chase*, 573 F.2d at 1016 (citations omitted).

■■■ The United States Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. I, § 1. With this in mind, the Supreme Court has consistently held "Congress generally cannot delegate its legislative power to another Branch." *Mistretta*, 488 U.S. at 372, 109 S.Ct. at 654 (citing *Field v. Clark*, 143 U.S. 649, 692, 12 S.Ct. 495, 504, 36 L.Ed. 294 (1892)). This principle, however, is not designed to "prevent Congress from obtaining the assistance of its coordinate branches." *Id.* Thus, when Congress does delegate decision-making authority to an agency it "must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Whitman v. Amn. Trucking Ass'ns, Inc.*, 531 U.S. 457, 472, 121 S.Ct. 903, 912, 149 L.Ed.2d 1 (2001) (alteration in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928)). The "intelligible principle" test is "'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Mistretta*, 488 U.S. at 372–73, 109 S.Ct. at 655 (quoting *Amn. Power & Light Co. v. SEC*, 329 U.S. 90, 105, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946)).

## General Policy

Plaintiffs concede that § 465 sufficiently identifies the agency that is to apply it. (Pls.' Br. Supp. Summ. J. at 23.) Therefore, the only issues are whether the statute sets forth its "general policy" and the "boundaries" of the Secretary's delegated authority. Section 5 of the IRA, 25 U.S.C. § 465, provides in relevant part:

The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

For the acquisition of such lands, interests in lands, water rights, and surface rights, and for expenses incident to such acquisition, there is authorized to be appropriated, out of any funds in the Treasury not otherwise appropriated, a sum not to exceed $2,000,000 in any one fiscal year: *Provided*, That no part of such funds shall be used to acquire additional land outside of the exterior boundaries of Navajo Indian Reservation for the Navajo Indians in Arizona, nor in New Mexico, in the event that legislation to define the exterior boundaries of the Navajo Indian Reservation in New Mexico, and for other purposes, or similar legislation, becomes law.

The unexpended balances of any appropriations made pursuant to this section shall remain available until expended.

Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. § 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

A plain reading of § 465 reveals that it was enacted "for the purpose of providing land for Indians." Although the statute uses "purpose," instead of "general policy," to describe its intention, the Court finds that such alleged discrepancy does not invalidate the statute. Furthermore, upon review of the historic context and legislative history of the IRA, Congress's "general policy" supporting enactment of § 465 becomes apparent. *See Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1002, 108 L.Ed.2d 132 (1990) (stating that "[i]n determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy") (citations omitted); *Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 376 n. 12 (D.C.Cir.1982) (relying on legislative history and philosophy of Act to find that it did not amount to an unconstitutional delegation of legislative power).

Prior to enactment of the IRA, Congress attempted to assimilate Indians into the country's mainstream through an allotment policy. General Allotment Act of Feb. 8, 1887, 24 Stat. 388, as amended, 25 U.S.C. § 331 et seq. (1976 ed.) (§§ 331–33 repealed 2000). The policy of the General Allotment Act was simple: "to extinguish tribal sovereignty, erase reservation boundaries, and force the assimilation of Indians into the society at large." *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 254, 112 S.Ct. 683, 686, 116 L.Ed.2d 687 (1992). This policy was a failure, which resulted in a loss of more than 90 million acres of Indian land. *Brendale v. Confederated Tribes and Bands of the Yakima Indian Nation*, 492 U.S. 408, 436 n. 1, 109 S.Ct. 2994, 3011 n. 1, 106 L.Ed.2d 343 (1989). As a result,

Congress enacted the IRA in an "attempt to encourage economic development, self-determination, cultural plurality, and the revival of tribalism." Felix S. Cohen, *Handbook of Federal Indian Law* 147 (1982 ed.). It was also stated that the IRA was designed "to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152, 93 S.Ct. 1267, 1272, 36 L.Ed.2d 114 (1973) (quoting H.R.Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)). In order to stem the staggering flow of land from Indian to non-Indian hands, the IRA set forth that "no land of any Indian reservation . . . shall be allotted in severalty to any Indian." 25 U.S.C. § 461. Congress also tried to replenish Indian lands by permitting the Secretary of the Interior to acquire land in trust for Indians, noting that land held in trust is exempt from local and state taxation. 25 U.S.C. § 465.

In repudiating the function of the General Allotment Act, the legislative history of the IRA states that its policy is "[t]o conserve and develop Indian lands and resources." S. 3645, 73d Cong., 2d Sess., 1 (1934). Plaintiffs contend that this policy is unconstitutional because it does not leave room "for a narrowing interpretation of 25 U.S.C. § 465 so as to avoid the overbroad delegation of the plain text of the act." (Pls.' Br. Supp. Summ. J. at 31.) Although this policy is not as specific as the policies listed in a prior version of the IRA, that fact alone does not render the subsequent policy statement invalid. *See* H.R. 7902, 73d Cong., 2d Sess., tit. III, § 1 (setting forth numerous policies of the IRA). Thus, upon review of the text of § 465 and the legislative history quoted above, it is the opinion of this Court that Congress has clearly delineated the general policy behind § 465.

**Boundaries**

Plaintiffs contend § 465 does not establish any "boundaries" on the Secretary's authority to take land into trust for Indians. A plain reading of the text of the statute, however, reveals that there are boundaries on the Secretary's authority. Moreover, when the text is read in conjunction with the overriding policy of the IRA, these boundaries are further defined. Finally, the recent decision in *Whitman* conclusively sets forth the Supreme Court's position on the delegation doctrine and effectively closes the door on plaintiffs' constitutional challenge.

Taken in its broadest terms, § 465 authorizes the Secretary to "acquire land in trust for Indians." However, when that generality is read together with all of § 465, as well as the other sections of the IRA and its history, limits on the Secretary's authority are revealed. First, the preceding analysis on the general policy of § 465 establishes that it was enacted "[t]o conserve and develop Indian lands and resources." S. 3645, 73d Cong., 2d Sess., 1 (1934). Thus, it can fairly be said that the acquisition of land for Indians furthers this stated policy. *See Roseville v. Norton*, 219 F.Supp.2d 130, 156 (D.D.C.2002) (stating that the Auburn Indian Restoration Act's policy to advance the Tribe's economic development is a limiting factor in delegation doctrine analysis). Second, the Secretary may only provide land for Indians. *See* 25 U.S.C. § 479 (defining who qualifies as an "Indian"). Third, the Secretary is limited in the amount of funds that can be appropriated to acquire such land. 25 U.S.C. § 465 (setting forth a limit of $2,000,000). Fourth, § 465 prohibits the Secretary from using any of these funds to acquire land outside the Navajo Indian Reservations in Arizona and New Mexico. Solely considering these factors, it is the opinion of this Court that these limitations satisfy

the "boundaries" portion of the "intelligible principle" test as it was recently explained in *Mistretta*.

The Eighth Circuit panel opinion held that § 465 was unconstitutional because it felt that the Secretary "had unrestricted power to acquire land from private citizens for the private use and benefit of Indian tribes or individual Indians." *Oacoma I,* 69 F.3d at 882. This decision was made, however, before the Supreme Court issued its opinion in *Whitman.* The pertinent issue raised in *Whitman* was whether section 109(b)(1) of the Clean Air Act, as added, 84 Stat. 1679, and amended, 42 U.S.C. § 7409(a), is an unconstitutional delegation of legislative power to the Administrator of the Environmental Protection Agency. *Whitman,* 531 U.S. at 462, 121 S.Ct. at 907. It is the ensuing analysis in *Whitman* that sets forth the Supreme Court's definition of the "intelligible principle" test and clarifies the constitutional issue before this Court.

Section 109(b)(1) gives the Administrator the authority to set air quality standards that "are requisite to protect the public health." The relevant part of that statute in issue in *Whitman* were the words "requisite" and "public health." *Id.* at 472–76, 121 S.Ct. at 911–14. The parties contesting § 109(b)(1) argued that these words were susceptible to various interpretations and indefinite. *Id.* at 465–66, 468–69, 121 S.Ct. at 908–09, 910. The Supreme Court held, however, that the language in § 109(b)(1) was "well within the outer limits of our nondelegation precedents." *Id.* at 474, 121 S.Ct. at 913.

In explaining its holding in *Whitman,* the Supreme Court noted that it has only found a statute lacking of an intelligible principle in two situations. *Id.* (citing *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed.

1570 (1935)). The Supreme Court further noted that it "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Id.* at 474–75, 121 S.Ct. at 913 (citation omitted). Also, the Supreme Court held that it has "never demanded, ... that statutes provide a determinate criterion for saying how much ... is too much." *Id.* at 475, 121 S.Ct. at 913 (internal quotations omitted). As an example of this theory, the Supreme Court cited a similar case where it noted that the statute need not decree "how 'imminent' was too imminent, or how 'necessary' was necessary enough, or ... how 'hazardous' was too hazardous." *Id.* (citing *Touby v. United States,* 500 U.S. 160, 165–67, 111 S.Ct. 1752, 1756–57, 114 L.Ed.2d 219 (1991)).

It is from this analysis in *Whitman* that similarities can be seen between the text of § 465 of the IRA and the text of § 109(b)(1) of the Clean Air Act. The Clean Air Act permits the Administrator to set air quality standards that "are requisite to protect the public health," while the IRA permits the Secretary to acquire land in trust for Indians "to conserve and develop Indian lands and resources." It is conceded by the Court that the act of acquiring land is different from the act of setting air quality standards, however, the authority that these statutes bestow upon executive branch officials is effectively the same. Therefore, by extending the Supreme Court's holding in *Whitman* to the facts of this case, it must be concluded that § 465 sets forth sufficient "boundaries" on the Secretary's authority and that it is not an unconstitutional delegation of legislative authority.

Finally, it is worthy of note that since the Eighth Circuit's panel opinion adjudging § 465 unconstitutional was vacated, several other circuits have weighed in on the matter and held that § 465 is not an

unconstitutional delegation of authority to the Secretary. *See United States v. Roberts,* 185 F.3d 1125, 1136–37 (10th Cir. 1999); *Confederated Tribes of Siletz Indians of Oregon v. United States,* 110 F.3d 688, 698 (9th Cir.1997) (stating that "[t]he general delegation of power to the Executive to take land into trust for the Indians is a valid delegation because Congress has decided under what circumstances land should be taken into trust and has delegated to the Secretary of the Interior the task of deciding when this power should be used"); *see also Carcieri,* 290 F.Supp.2d at 187 (finding persuasive the Tenth Circuit's delegation analysis in *Roberts* ). Thus, upon review of the text of § 465, its legislative history, and in light of the cases decided after the Eighth's Circuit opinion in *Oacoma I,* it is the opinion of this Court that Congress has clearly delineated the "boundaries" of the Secretary's authority as bestowed upon him by § 465.

## CONCLUSION

For the foregoing reasons, it is the opinion of this Court that the Secretary's actions were not arbitrary, capricious, or an abuse of discretion. Furthermore, in conformity with the Court's previous opinion, it remains the decision of this Court "that 25 U.S.C. § 465 is constitutional both on its face and as applied in this case." *See South Dakota,* CIV. 92–3023 at 22. Accordingly, it is hereby

ORDERED that plaintiffs' motion for summary judgment (Docket # 82) is denied.

IT IS FURTHER ORDERED that Interior's motion for summary judgment (Docket # 96) is granted. Judgment shall be issued in favor of defendants and against plaintiffs.